IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SENG-TIONG HO AND YINGYAN HUANG, <br><br> Plaintiffs, <br><br> v. <br><br> ALLEN TAFLOVE AND SHIH-HUI CHANG, <br><br> Defendants. | No. 07-CV-4305 <br><br> Judge Bucklo <br> Magistrate Judge Nolan |

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiffs claim to have discovered a new mathematical model showing how electrons behave under certain circumstances. This model undeniably is theoretical, non-patentable, and without commercial use. Nor can Plaintiffs claim it as a trade secret, for Plaintiffs themselves voluntarily published it to the world, <u>before</u> Defendants took <u>any</u> of the actions about which Plaintiffs complain. Moreover, the Copyright Act explicitly excludes the matters about which Plaintiffs complain. As such, the intellectual property laws provide Plaintiffs no cause of action. The other claims Plaintiffs assert similarly fail.

Of course, our society does not permit the copying that Plaintiffs claim has transpired without consequence. On the contrary, a finding that one academic has improperly copied another's work can be the death knell of an academic career. But Plaintiffs already pursued that avenue and brought accusations of plagiarism against Defendants in no fewer than three separate forums – Northwestern University, where all parties were employed at the time, and the two scientific organizations that published the papers about which Plaintiffs complain. All three

organizations dismissed the allegations of plagiarism. Plaintiffs, refusing to accept these three decisions, filed this lawsuit. However, the legal system does not afford Plaintiffs a fourth bite at the proverbial apple.

I.  **UNDISPUTED FACTS**

    A.  <u>**Background**</u>

Plaintiff Ho and Defendant Taflove are professors of engineering at Northwestern University. SMF ¶¶ 3, 7. During the relevant period, Plaintiff Huang and Defendant Chang were graduate students of engineering at Northwestern University. SMF ¶¶ 10, 13, 14.

Scientists develop mathematical models to describe various phenomena.[1] SMF ¶ 17. One could refer to this as theoretical modeling. SMF ¶ 17. Scientists often run experiments to verify such models and publish papers describing the model, the experimental implementation, and the results. SMF ¶ 18. Over recent decades, an alternative to experimentalism has arisen, whereby one instead runs numerical simulations. SMF ¶ 19. This alternative is driven principally by (a) the fact that some mathematical models are extremely difficult or impossible to verify experimentally (e.g., tracking electrons) and (b) the enormous growth in the capability of computers to run numerical simulations. SMF ¶ 20.

For numerical simulations, extremely complex computer code often must be created. SMF ¶ 21. Also, input parameters must be selected to run the computer code. SMF ¶ 22. These parameters are adjusted based on various considerations, such as the physical properties and geometric configuration of the material being modeled. SMF ¶ 23. The results of such simulations will differ if the computer code differs or any of the these inputs differ. SMF ¶¶ 24, 25.

---

[1] Fact references are to the numbered paragraphs of Defendants' Statement Of Material Facts To Which There Is No Genuine Issue In Support Of Their Motion For Summary Judgment ("SMF").

Professor Taflove is the leading world expert (or at least one of the top few) in one method of numerical simulations called "Finite Difference Time Domain" ("FDTD"). SMF ¶ 4. Professor Taflove has been a leader in this area since 1975, coined the term "FDTD" in 1980, published the leading textbook for FDTD in 1995, and published subsequent editions in 2000 and 2005. SMF ¶ 4. The societal value of FDTD is perhaps best illustrated by a current project of Professors Vadim Backman and Taflove, where, utilizing large-scale funding support from the National Cancer Institute, they are developing novel, minimally invasive, optical techniques that could permit effective, low-cost, population-wide screening for early-stage colon cancer, pancreatic cancer and lung cancer. SMF ¶ 5. Aside from his research, Defendant Taflove has received the highest accolades for undergraduate teaching that Northwestern University can bestow upon its faculty. SMF ¶ 6.

**B.    The Publications at Issue**

In 1999, Defendant Shih-Hui ("Gilbert") Chang or Plaintiff Seng-Tiong Ho (or some combination) developed a set of mathematical equations describing the movement of two electrons across four energy levels (the "4 Level 2 Electron Model" or "4L2E Model"). SMF ¶¶ 26, 27. At the time, Defendant Chang was a PhD candidate and advisee of Plaintiff Ho. SMF ¶ 12. Prior to 1999, Defendant Chang had worked with Defendant Taflove in developing FDTD computer codes. SMF ¶ 30. In 1999, he developed computer codes to run simulations of the 4L2E Model ("Gilbert's 1999 Code"). SMF ¶ 31.

In 2000, Defendant Chang provided his code to a postdoc working for Plaintiff Ho, named Seongsik Chang ("Seongsik"). SMF ¶ 32. Thereafter, Seongsik and Plaintiff Yingyan Huang, then a M.S. degree candidate and advisee of Plaintiff Ho, made modifications to Gilbert's 1999 Code, which they then used in their subsequent work in 2001 - 2002, discussed

below. SMF ¶ 33. Indeed, in her M.S. Thesis, Plaintiff Huang wrote, "Many thanks to Gilbert Chang, from whom we got the early version of the FDTD code. This is where all our works is [sic] built on." SMF ¶ 37.

In 2001, Seongsik, Plaintiff Huang, Defendant Chang and Plaintiff Ho co-authored a PowerPoint presentation discussing the 4L2E Model, listing its operating equations, and discussing a simulation ("2001 Presentation"). SMF ¶¶ 34-35. This was the first public presentation of the concept, formulation, and validation of the 4L2E Model. SMF ¶ 35.

In May 2002, Plaintiff Huang published her Masters degree thesis ("Huang M.S. Thesis"), with Plaintiff Ho's permission. SMF ¶ 36. In early 2002, Defendant Chang switched advisors, from Plaintiff Ho to Defendant Taflove. SMF ¶ 12. In 2003, Defendant Chang published (with Defendant Taflove as a co-author) a short article for a conference publication ("APS Paper"), and a more detailed journal article in August 2004 ("Optics Express Article"). SMF ¶¶ 40-42.

Pages 6-12 of the Huang M.S. Thesis describe the 4L2E Model, as do pages 1-3 of the APS Paper and 2-5 of the Optics Express Article. SMF ¶¶ 43-46. Pages 6-12 of the Huang M.S. Thesis contain the equations that Plaintiff Ho claims to have developed by 1999. SMF ¶¶ 38-39.

Pages 13 – 28 and 29 - 32 of the Huang M.S. Thesis describe superradiance and reduced medium method, which are not discussed in the APS Paper or the Optics Express Article. SMF ¶¶ 47-48. Pages 33-36 of the Huang M.S. Thesis discuss her simulation results, which are different than the simulation results discussed in the APS Paper and the Optics Express Article, as the APS Paper and Optics Express Article used different computer code and different parameters than the Huang M.S. Thesis. SMF ¶¶ 49-53.

Neither Defendant received any payments for the APS Paper or the Optics Express

Article. SMF ¶ 54. Neither Defendant physically took any tangible property of Plaintiffs. SMF ¶ 55. Plaintiffs did not rely to their detriment on any statement or action of any Defendant, as they were not deceived by Defendants. SMF ¶ 56. The 4 Level 2 Electron Model has no commercial use and was publicly available before the Defendants took any of the actions about which Plaintiffs complain. SMF ¶¶ 36, 57.

### C. The Plagiarism Allegations and Aftermath

In 2004 – 2005, Plaintiffs filed formal charges, accusing Defendants of plagiarism, with Northwestern University, the Optical Society of America (which published the Optics Express Paper) and Institute of Electrical and Electronics Engineers (which published the APS Paper). SMF ¶ 58. Scientists at each of these three organizations reviewed the allegations, and all three organizations dismissed Plaintiffs' allegations of plagiarism. SMF ¶ 59. Plaintiffs asked each of these three organizations to reconsider their decisions, and each of them refused to do so. SMF ¶ 60.

In 2005, Defendant Taflove published the third edition of his textbook on FDTD. SMF ¶ 61. Within its 1006 pages is a 5 page discussion of The 4L2E Model, which cites both the Huang M.S. Thesis and the Optics Express Article. SMF ¶ 62. Plaintiffs do not contend that this book infringes on their copyright rights. SMF ¶ 63.

In 2006, Plaintiffs published an article about a multi-level multi-electron model, utilizing and building upon the Huang M.S. Thesis and Ho's notebooks, citing these, but not citing the APS Paper or the Optics Express Article. SMF ¶¶ 65-66.

## II. ARGUMENT

### A. The Summary Judgment Standard

The Supreme Court has clearly and unequivocally confirmed that the summary judgment procedure provided for in Federal Rule of Civil Procedure 56(c) "is properly regarded not as a

disfavored procedural shortcut, but rather as an integral part of the Federal Rules." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 91 L.Ed.2d 265 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Int'l Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 87 L.Ed.2d 460 (1986). "In determining whether a genuine issue of material fact exists, courts must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in favor of that party." *Debs v. Northeastern Illinois Univ.*, 153 F.3d 390, 394 (7th Cir.1998).

Substantive law determines which facts are "material;" that is, those facts which might affect the outcome of the suit under the governing law. *See McGinn v. Burlington Northern R.R. Co.*, 102 F.3d 295, 299 (7th Cir.1996). Consequently, a dispute over irrelevant or unnecessary facts does not preclude summary judgment. *See Hardin v. S.C. Johnson & Son, Inc.*, 167 F.3d 340, 344 (7th Cir. 1999). With regard to the "genuine issue" requirement, the Supreme Court has emphasized that the party opposing summary judgment may not simply rest on its pleadings, but must provide sufficient evidence such that a reasonable trier of fact could return a verdict for the non-moving party. *Anderson*, 477 U.S. at 247; *Matsushita*, 475 U.S. at 486.

### B.   Plaintiffs' Copyright Claim Fails

Count I of Plaintiffs' Complaint, copyright infringement, fails because the material Plaintiffs claim was copied is not protectable via copyright; and even if it were copyrightable, Chang would own any relevant copyright rights. Any claim of copyright infringement on the APS Paper, published in 2003, is barred by the three year statute of limitations (17 U.S.C. §502), as the lawsuit was filed July 31, 2007. Thus, the discussion below focuses on the Optics Express Article (though the same reasoning would apply to the APS Paper and Professor Taflove's book).

1.   **The Mathematical Model At Issue Is Not Copyrightable**

Copyright law exists to protect the manner of literary presentation, not the substance of scientific discovery. Yet, the parties to this case are scientists, not poets. Plaintiffs claim to have discovered and developed a new mathematical model of how electrons behave under certain circumstances. Any value of this work lies in the discovery and application of ideas and is not legally protected, absent a legitimate patent or trade secret protection.

Mathematical models, equations, or principles are, as a matter of law, not copyrightable. As the Copyright Act itself proclaims:

> In no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work.

17 U.S.C. § 102(b).

This has been well settled since the 19th Century, when the Supreme Court, in the seminal opinion on the prohibition of extending copyright to such matters, stated:

> The copyright of a work on mathematical science cannot give to the author an exclusive right to the methods of operation which he propounds, or to the diagrams which he employs to explain them, so as to prevent an engineer from using them whenever occasion requires. The very object of publishing a book on science or the useful arts is to communicate to the world the useful knowledge which it contains. But this object would be frustrated if the knowledge could not be used without incurring the guilt of piracy of the book.

*Baker v. Selden*, 101 U.S. 99, 103 (1879).

As the Eleventh Circuit has explained, copyright protection cannot extend to such models or formulas because, "to grant copyright protection to the first person to devise the formula effectively would remove that mathematical fact from the public domain." *MiTek Holdings, Inc. v. Arce Engineering Co., Inc.*, 89 F.3d 1548, 1557 fn. 20 (11th Cir. 1996); *Dimension D, LLC v. True, 2006 WL 1061952*, *4 (M. D. Ala. 2006) ("Copyright protection is not generally available

for a mathematical formula or algorithm.").

This tenet of copyright law has become known as the "merger doctrine" – that an expression is not protectable where it is one of only a few ways (or the only way) to express an idea. The "merger doctrine" has been accepted and applied in the Seventh Circuit. *Assessment Technologies of WI, LLC v. WIREdata, Inc.*, 350 F.3d 640, 643 (7th Cir. 2003). Where an idea itself is inextricable from the expression of the idea, the two are said to have "merged" and the expression is not subject to copyright. *Id.*

Finally, the Copyright Office itself explains that such material is not subject to copyright protection. Its "Copyright Office Circular 31" states that: "Copyright protection is not available for ideas or procedures for doing, making, or building things; scientific or technical methods or discoveries; business operations or procedures; mathematical principles; formulas, algorithms; or any concept, process [or] method of operation."

The work that Plaintiffs lay claim to in this matter – a scientific model for how electrons behave – is precisely the type of information the Copyright Act, the Courts, and the Copyright Office have said cannot be protected by copyright. As Plaintiff Huang repeatedly admitted in her deposition, it is the substance, not the manner of expression, that is at issue:

> Q. So substantively, those . . . two ideas as described in your master's thesis and the Optics Express paper are the same?
>
> A. Yes.
>
> Q. The substance, I take it, is more important than the way you showed it?
>
> A. Yes. . . .
>
> Q. So the fact that the Optics Express article may use some slightly different symbols or different symbols to describe the same mathematical concepts, that difference doesn't make you feel any better, because it's the substance of the equations that's important, correct?
>
> A. Yes. (SMF ¶ 39.)

If parties were permitted to copyright mathematical models, then any scientist seeking to discuss predecessors' work and take that work to the next level would be precluded from doing so, unless s/he obtained each predecessor's permission. Such a regime would create a fundamental impediment to the development of the body of human knowledge. Fortunately, such an impediment is not contemplated by the Copyright Act, and Count I should be dismissed.

### 2. Even If The Relevant Material Were Copyrightable, Chang Would Have Rights to that Material

Defendant Chang was a co-author in the 2001 Presentation and, as such, has ownership rights over the 4L2E Model. "Whether a joint work is created by joint authorship or in some other way, the authors are co-owners of copyright in the work." Leaffer, Understanding Copyright Law (1990). "A joint owner may, without obtaining the consent of the other joint owners, either exploit the work himself, *Weinstein v. Univ. of Ill.*, 811 F.2d 1091 [at 1096] (7th Cir. 1987) (joint owner may prepare and publish derivative work), or grant a nonexclusive license to third parties. *Meredith v. Smith*, 145 F.2d 620 [at 621] (9th Cir. 1944)." Nimmer on Copyright, Section 6.10[A]. Therefore, Chang, as co-author of the 2001 Presentation of the 4L2E Model, had the right to exploit the work himself and permit Taflove to do the same, precluding Plaintiffs' copyright claims.

### C. Plaintiffs' False Designation Of Origin Claim Fails

Count II of Plaintiffs' Complaint alleges that Defendants have used Plaintiffs' works without attribution, which has "caused and [is] likely to continue to cause confusion or to cause mistake or to deceive the public as to the origin of the subject works in violation of the Lanham Act, 15 U.S.C. § 1125." Plaintiffs thus claim that the alleged violation of their intellectual property rights constitutes a Lanham Act violation.

Plaintiffs' Lanham Act claim is based on a fundamentally mistaken view of what is

-9-

prohibited by that Act. The Lanham Act prohibits the "passing off" of goods, not ideas. The United States Supreme Court, in *Dastar Corp. v. Twentieth Century Fox*, 123 S.Ct. 2041 (2003) expressly refused to grant Lanham Act protection to ideas, stating:

> But as used in the Lanham Act, the phrase "origin of goods" is in our view incapable of connoting the person or entity that originated the ideas or communications that "goods" embody or contain.

*Id.* at 2047; *see also Bretford Mfg., Inc. v. Smith System Mfg. Corp.*, 419 F.3d 576, 580 (7th Cir. 2005).

The Supreme Court thus made it clear that the Lanham Act does not protect intellectual property rights, explaining that "In general, unless an intellectual property right such as a patent or copyright protects an item, it will be subject to copying." *Dastar*, 123 S.Ct.. at 2048, quoting *FrafFix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23, 29 (2001). Thus, the Court held that even if the plaintiff had falsely represented itself to be the originator of a creative work (a video), that would not be a Lanham Act violation. *Id.* at 2049 Indeed, the Court specifically stated that the Lanham Act does not create a cause of action for plagiarism. *Id.* at 2049. That is precisely what Plaintiffs seek to do here, and thus, their claim must be dismissed.

D.   **Plaintiffs' Unfair Competition Claim Fails**

Count III of Plaintiffs' Complaint alleges unfair competition and deceptive trade practices based on the same alleged "infringement," "plagiarism," and "passing off" conduct described above. Common law claims for unfair competition and deceptive trade practices are subject to the same analysis as claims under the Lanham Act. *SB Designs, Inc. v. Reebok International, LTD*, 338 F.Supp.2d 904, 914 (N.D. Ill., 2004); *Bob Cereden & Associates v. Infosoft, Inc.*, 326 F.Supp.2d 876, 880 (N.D. Ill., 2004); *World Impressions, Inc. v. McDonald's Corp.*, 235 F.Supp.2d 831, 841 (N.D. Ill., 2002). Thus, as Plaintiffs cannot make out a claim for false designation under the Lanham Act (See Section C, *supra*), their unfair competition claim

also fails.

### E. Plaintiffs' Conversion Claim Fails

Count IV of Plaintiffs' Complaint alleges that Defendants engaged in "conversion" by publishing Plaintiffs' work and "passing off" that work as Defendants' own. This count is spurious. Plaintiffs do not claim that Defendants stole any specific chattel or personal property (a notebook, a paper, etc.) from them. Rather, they again claim that Defendants stole their *ideas* and passed them off as Defendants' own. Under Illinois law, this is not conversion.

As the Illinois Supreme Court has explained, "an action for conversion lies only for personal property which is tangible, or at least represented by or connected with something tangible." *In re Thebus*, 483 N.E.2d 1258, 1260; 91 Ill. Dec. 623, 625 (Ill. 1985). Similarly, as the Seventh Circuit has explained, one who takes the original and copies from another may be subject to a conversion claim, because s/he has completely deprived the owner of any ability to use the document. *FMC Corp. v. Capital Cities/ABC, Inc.* 915 F.3d 300, 303-304 (7th Cir. 1990). However, one who takes a copy and leaves the original cannot be held liable under a conversion theory. *Id.*

In the present case, Plaintiffs do not contend that the Defendants took any physical copies of their work, much less the originals, and their conversion claim thus fails.

### F. Plaintiffs' Fraud/Misrepresentation Claim Fails

Count V of Plaintiffs' Complaint alleges that, when Defendants presented their 2004 Article to the Optics Express Journal for publication, Defendants "fraudulently misrepresented" to the Journal that they were the original authors of the work. This does not state a claim for fraud. Under Illinois law, the elements of fraud include the defendant's intent that the statement induce the plaintiff to act and the plaintiff's detrimental reliance on the statement. *Suburban 1, Inc. v. GHS Mortgage, LLC*, 833 N.E.2d 18, 21-22; 295 Ill. Dec. 536, 539 (Ill. App. 2d Dist.

2005). Here, Plaintiffs have failed to prove (or even allege) either of these two elements. Plaintiffs do not allege that Defendants made any false statements to Plaintiffs, sought to entice Plaintiffs to act, or that *they* (Plaintiffs) relied on any misrepresentation about the authorship of Defendants' article; on the contrary, they admit that they were not misled. Instead, Plaintiffs contend that third parties, the publishing journals, were misled.

*Suburban 1, supra,* presented a similar scenario. There, a broker claimed common law fraud against a mortgage company for making false statements to certain home sellers. *Id.* The sellers, relying on the false statements, lost the opportunity to sell their house, resulting in the broker losing the opportunity to earn a commission on the sale. The court ruled that the broker could not sue for fraud as he, himself, had not relied on the false statements. *Id.; see also People ex rel Peters v. Murphy-Night,* 618 N.E.2d 459, 466; 187 Ill.Dec. 868, 875 (Ill. App. 1st Dist., 1993). Here, Plaintiffs are unable to make out a claim for fraud based on alleged misrepresentations made to others and upon which Plaintiffs never relied.

### G. Plaintiffs' Trade Secrets Claim Fails

Count VI of Plaintiffs' Complaint alleges that Defendants misappropriated trade secrets. The Illinois Trade Secrets Act provides that a trade secret must (a) have economic value, (b) derive that economic value by being a secret and (c) be subject to reasonable efforts by the party claiming protection to keep it a secret. 765 ILCS 1065/2(d); *Gillis Associated Industries, Inc. v. Cari-All Inc.*, 564 N.E.2d 881, 885-86; 151 Ill.Dec. 426, 430-31 (Ill. App. 1st Dist. 1990) (refusing trade secret protections where the plaintiffs failed to take affirmative steps to preserve secrecy); *Del Monte Fresh Produce, N.A., Inc. v. Chiquita Brants Int'l, Inc.*, 616 F.Supp.2d 805,. 820 (price information disclosed by a business to its customers is not a trade secret due to disclosure by plaintiff).

Plaintiffs' trade secrets claim is frivolous. The 4L2E Model has no economic value and it

is not a secret. Moreover, far from taking steps to guard the secrecy of this alleged "trade secret," such as obtaining a nondisclosure agreement (SMF ¶ 28), Plaintiffs actually took the affirmative step of publishing it – making it available to anyone who wanted to see it, before Defendants took any of the actions at issue. Plaintiffs' trade secrets claim thus fails.

H. **The Copyright Acts Preempts All Counts Other Than Count I**

Counts II – VI fail for the additional reason that they are preempted by the federal Copyright Act of 1976, 17 U.S.C. § 101 ("Act"), which states:

> [A]ll legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103, whether created before or after that date and whether published or unpublished, are governed exclusively by this title. Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.

17 U.S.C. § 301(a).

To show that a claimed legal right is not equivalent to copyright, the right must not be "infringed by the mere act of reproduction, performance, distribution or display." *Baltimore Orioles, Inc. v. Major League Baseball Players Ass'n,* 805 F.2d 663, 677 (7th Cir. 1986); *Marobie-FL, Inc. v. National Ass'n of Fire Equip. Distribs.,* 983 F. Supp. 1167, 1180 (N.D. Ill. 1997); *Reinke & Assoc. Architects Inc. v. Cluxton,* 2003 WL 1338485, *2 (N.D. Ill. 2003); *see also Bonito Boats, Inc. v. Thunder Craft Boats, Inc.,* 489 U.S. 141, 149 (1989)(state law cannot supplement federal patent law by providing additional property rights); *Waner v. Ford Motor Co.,* 331 F.3d 851, 856 (Fed. Cir. 2003)(same).

All of Plaintiffs' non-copyright claims are preempted because they simply state alternative legal theories of recovery for Defendants' alleged copying of Plaintiffs' work. The

language of the complaint itself is telling:

(i) Second cause of action for false designation of origin: "As a result of Defendants' use of Plaintiffs' works and failure to provide any attribution to Plaintiffs, Defendants have caused and are likely to continue to cause confusion. . ." (Complaint ¶ 35).

(ii) Third cause of action for unfair competition: "Defendants have thereby been engaging in unfair and deceptive trade practices by palming off the infringing works as original works, and in many respects, by characterizing themselves as authors." (Id. at ¶ 38).

(iii) Fourth cause of action for conversion: "Defendants misappropriated the works by publishing said works and text in the Article as aforesaid. . ." (Id. at ¶ 42).

(iv) Fifth cause of action for fraud/misrepresentation: "When they submitted the Article for publication, Defendants knew they were not the original authors of the ideas in the Article." (Id. at ¶ 44).

(v) Sixth cause of action for misrepresentation [sic] of trade secrets: "By the acts set forth above [unauthorized publication without attribution], Defendants misappropriated Plaintiffs' trade secrets." (Id. at ¶ 49).

As this list clearly demonstrates, in Counts II-VI Plaintiffs simply restate, in five different ways, the allegation that Defendants published Plaintiffs' work without permission and without giving Plaintiffs credit. The Copyright Act is Plaintiffs' only avenue for redress for these allegations.

The Courts have routinely dismissed similar claims. For example, the *Reinke* court dismissed plaintiff's unfair competition claim in which plaintiff alleged that defendant intentionally and falsely designated the work as its own, confused the public, and caused a third party to rely on the misrepresentation. *Id. citing Marobie-FL*, 983 F. Supp. at 1180. *Accord, Lacour v. Time Warner*, 2000 WL 688946 at *8 (N.D. Ill. May 22, 2000) ("The failure to award [the author] credit and any resulting confusion or deception of consumers do not amount to affirmative misrepresentations about the origin of the [work]. They represent nothing more than the inherent misrepresentation that accompanies unauthorized copying and reproduction of

another's copyrighted work."). Likewise, in *Cassetica Software, Inc. v. Computer Scis. Corp.*, 2009 WL 1703015, *5 (N.D. Ill. June 18, 2009), the Court dismissed a conversion claim based on the alleged unauthorized reproduction of work. Here, Counts II-VI similarly should be dismissed.

### III. CONCLUSION

As set forth above, Plaintiffs have failed to raise any issue of material fact regarding any of the claims they have brought against the Defendants.[2] As such, their claims should be dismissed with prejudice.

/s/ David K. Haase
David K. Haase (#6201278)

David K. Haase (#6201278)
David Christlieb
LITTLER MENDELSON
A Professional Corporation
200 N. LaSalle Street, Suite 2900
Chicago, IL 60601
(312) 795-3286


Aaron S. Barlow
Jenner & Block, LLP
330 North Wabash Avenue
Chicago, IL 60611
(312) 222-9350

Dated: September 10, 2009

---

[2] Plaintiffs bring Count VII for an "accounting." Obviously, as each of the substantive counts of the Complaint fail, there should be no accounting.

## **CERTIFICATE OF SERVICE**

David K. Haase, an attorney, certifies that on September 10, 2009, a copy of the **Memorandum In Support of Defendants' Motion for Summary Judgment** was filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

James K. Borcia
Si-Yong Yee
Tressler, Soderstrom, Maloney & Priess, LLP
233 South Wacker Drive, 22nd Floor
Chicago, IL 60606

                                              /s/ David K. Haase
                                                David K. Haase